IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MABRUK KHALFALLAH and,** | § | |
| **HUDA ELFITURI,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-414-M-BK |
| | § | |
| **ERIC HOLDER,** | § | |
| Attorney General, et al., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the District Court's *Standing Order of Reference* (Doc. 5), this case has been referred to the undersigned for pretrial management. The cause is now before the Court on Defendants' *Motion to Dismiss*. (Doc. 6). After reviewing the relevant pleadings and applicable law, the Court finds Defendants' motion to be well taken and recommends that it be GRANTED and that Plaintiffs' case be DISMISSED as to all Defendants.

**I.  BACKGROUND**

On March 1, 2011, Plaintiffs filed their *Complaint for Writ of Mandamus* to compel Defendants to take action on their I-485 applications to become Lawful Permanent Residents. (Doc. 2 at 1).

Plaintiff, Mabruk Khalfallah, entered the United States on or about August 10, 1983, on a student visa. (Declaration of Michele R. Williamson Doc. 7 at 3). Khalfallah did not attend school after 1984, but remained in the United States and applied for asylum on January 24, 2003. *Id*. at 3-4. An immigration judge granted asylum to Khalfallah on May 12, 2004. *Id*. at 4.

Plaintiff, Huda Elfituri, entered the United States as a visitor on or about September 12, 2000. *Id*. at 4. She married Khalfallah on May 17, 2001, and after Khalfallah was granted asylum, he filed an asylum application on behalf of his wife. *Id*. On April 12, 2006, Elfituri was granted asylum as a derivative of her husband. *Id*.

On November 16, 2007, Khalfallah filed a Form I-485, Application to Register Permanent Residence or Adjust Status, and on July 3, 2007, Elfituri also filed a Form I-485. *Id*. at 4. Both applications remain pending. *Id*. Background and security checks are not causing delay in adjudication of this case. *Id*. at 5-7. Rather, Plaintiffs' adjustment applications have been pending since the name checks were completed due to evidence of Khalfallah's terrorism-related inadmissibility. *Id*. at 7. Specifically, Khalfallah's asylum claim contained information indicating that in 1994 he became very involved in the National Front for the Salvation of Libya ("NFSL"), a Tier III terrorist organization according to U.S. Citizenship and Immigration Services (USCIS).[1] *Id*. at 7-9.

Under 8 U.S.C. § 1159(b)(5), the USCIS must determine an applicant's admissibility in adjudicating an application for adjustment of status. Under 8 U.S.C. § 1182(a)(3)(B), an applicant is inadmissible if he has engaged in terrorist activity within the meaning of the statute. However, 8 U.S.C. § 1182(d)(3)(B)(i) states that, with few exceptions, "the Secretary of Homeland Security, after consultation with the Secretary of State and the Attorney General, may determine in such Secretary's sole unreviewable discretion that subsection (a)(3)(B) of this section shall not apply with respect to an alien within the scope of that subsection." This

---

[1] While Tier I and Tier II organizations must be designated as such by the Government, the plain language of the governing statute makes clear that no such designation is required for Tier III status. *Compare* 8 U.S.C. § 1182(a)(3)(B)(vi)(I) *with* 8 U.S.C. § 1182(a)(3)(B)(vi)(III).

discretionary authority to grant exemptions from the terrorist-related inadmissibility grounds was provided pursuant to the Consolidated Appropriations Act of 2008 ("CAA"), which was signed into law on December 26, 2007.  *See* Consolidated Appropriations Act of 2008, Pub. L. No. 110–161, 121 Stat. 1844, Div. J, Title VI, sec. 691; (Doc. 7 at 9).  In light of this enactment, the Deputy Director of USCIS issued a series of policy memoranda explaining that the Secretary had not yet exercised the authority conferred under the CAA, and directing adjudicators to withhold their decisions in cases where the applicants might benefit from the expanded discretionary authority granted to the Secretary under the CAA.  *Id*. at 9-10, 12-35.

Defendants aver that if USCIS were required to adjudicate Plaintiffs' applications today, it would likely deny the applications, without prejudice to re-filing, under the terrorism-related inadmissibility grounds at 8 U.S.C. §§ 1182(a)(3)(B)(i)(I) and (VI).  *Id*. at 12.  However, pursuant to the discretionary authority of the Secretary and USCIS policy memoranda, Plaintiffs' applications have been reviewed and remain on hold in accordance with agency policy pending future exemption related guidance.  *Id*. at 9-13.

 On May 2, 2011, Defendants filed the current *Motion to Dismiss* (Doc. 6) under F‌ED. R. C‌IV. P. 12(b)(1).  Specifically, Defendants aver that the Court lacks jurisdiction over this matter pursuant to the jurisdiction stripping provisions of 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(a)(2)(B)(ii).  (Doc. 6 at 12-22).  Plaintiffs respond that 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(a)(2)(B)(ii) are inapplicable and do not strip the Court of jurisdiction.  (Doc. 10).  In addition, Plaintiffs aver that Defendants have failed to comply with the deadlines prescribed by 8 C.F.R. § 103.2(b)(18).  Defendants reply that 8 C.F.R. § 103.2(b)(18) does not apply.  Having received Plaintiffs' response and Defendants' reply, Defendants' *Motion to Dismiss* is ripe for

consideration.

## II.  APPLICABLE LAW and ANALYSIS

The issue before the Court is whether subject matter jurisdiction exists to adjudicate Plaintiffs' petition to compel Defendants to rule on their I-485 applications for adjustment of status.

A. Standard of Review

Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim.  *See Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  Absent jurisdiction conferred by statute or the Constitution, district courts lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking.  *Id.*; *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).  Pursuant to Rule 12(b)(1), a court must dismiss any action for which the court lacks statutory or constitutional authority to adjudicate.  *Home Builders Ass'n, Inc.,* 143 F.3d at 1010.  A court may dismiss a case for lack of subject matter jurisdiction based on: (1) the complaint alone; (2) the complaint based on undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of the disputed facts.  *See Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).

Because the Defendants are alleging that 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(a)(2)(B)(ii) strip this Court of jurisdiction, they must "overcome the strong presumption in favor of judicial review of administrative action." *INS v. St. Cyr*, 533 U.S. 289, 298 (2001).  Thus, only upon a "showing of clear and convincing evidence of a contrary legislative intent [should] the courts restrict access to judicial review." *Bd. of Governors of the Fed. Reserve Sys.*

*v. MCorp Fin., Inc.*, 502 U.S. 32, 44 (1991) (citation and internal quotation marks omitted). But the Court also must be mindful of the general rule that courts should refrain from interfering with matters of immigration and national security. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) ("[J]udicial deference to the Executive Branch is especially appropriate in the immigration context where officials exercise especially sensitive political functions that implicate questions of foreign relations." (internal quotation marks omitted)).

B. Does the Court lack Subject Matter Jurisdiction?

Defendants move to have Plaintiffs' case dismissed pursuant to 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(a)(2)(B)(ii). (Doc. 6). Each argument is addressed in turn.

8 U.S.C. § 1252(g)

Defendants aver that the review scheme of 8 U.S.C. § 1252(g) precludes judicial review of this matter and strips the court of jurisdiction. (Doc. 6 at 12). 8 U.S.C. § 1252(g) states in pertinent part that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." However, 8 U.S.C. § 1252(g) only applies to judicial review of orders of removal. *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482-84 (1999)(holding that 8 U.S.C. § 1252(g) does not cover "the universe of deportation claims" but applies only to "three discrete events along the road to deportation."). Thus, 8 U.S.C. § 1252(g) does not strip the Court of jurisdiction to hear this matter because Plaintiffs are not appealing an order of removal.

8 U.S.C. § 1252(a)(2)(B)(ii)

Defendants also contend that 8 U.S.C. § 1252(a)(2)(B)(ii) deprives the Court of

jurisdiction to adjudicate Plaintiffs' claims because Congress has divested the courts of jurisdiction over immigration suits that concern decisions or actions that are committed to agency discretion. (Doc. 6 at 16). That section provides that no court shall have jurisdiction to review "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." 8 U.S.C. § 1252(a)(2)(B)(ii).

"Considered in the context of its individual components, the defendants can establish the applicability of Section 1252(a)(2)(B)(ii) by demonstrating that (1) the holding of the plaintiff's application in abeyance is within the discretion of the Secretary of Homeland Security; (2) the discretion exercised by the Secretary is one that is 'specified under this subchapter'; and (3) the specified discretion is an 'action' as that term is used in the statute." *Singh v. Napolitano*, 710 F.Supp. 2d 123, 129 (D.D.C. 2010). There is, however, a split among courts as to whether a decision to hold an application for adjustment of status in abeyance pursuant to the policy memoranda meets all three requirements. *Compare Singh*, 710 F.Supp. 2d 123; *Seydi v. Untied States Immigration Servs.*, 2011 WL 1135553 (E.D. Mich. 2011); *with Beshir v. Holder*, 2011 WL 204798 (D.D.C. 2011)(holding the Secretary's authority to withhold adjustment applications is not "specified under the subchapter"); *Al-Rifahe v. Mayorkas*, 2011 WL 825668 (D. Minn. 2011)(same). Having reviewed the relevant decisions, this Court finds the approach taken by the *Singh* court to be well reasoned. Thus, as in *Singh*, the undersigned concludes that "the government's decision to hold the Plaintiffs' application in abeyance falls within the purview of discretionary decisions or actions" outside of this Court's jurisdiction. *Singh*, 710 F.Supp. 2d at

129.

In assessing the first component of 1252(a)(2)(B)(ii), the Court finds that the holding in abeyance of the Plaintiffs' applications is within the discretion of the Secretary. The decision to do so was based on the additional discretionary authority granted by the CAA, that is now codified in 8 U.S.C. § 1182(d)(3)(B)(i). *See* Pub. L. No. 110–161; *see also* (Doc. 7 at 9-13). Section 1182(d)(3)(B)(i) states that, with few exceptions, "the Secretary of Homeland Security, after consultation with the Secretary of State and the Attorney General, may determine in such Secretary's **sole unreviewable discretion** that subsection (a)(3)(B) of this section[2] shall not apply with respect to an alien within the scope of that subsection." 8 U.S.C. § 1182(d)(3)(B)(i) (emphasis added). Moreover, the Secretary also has discretion to promulgate regulations she believes necessary to exercise her authority to grant permanent resident status to an asylee. *See* 8 U.S.C. § 1159(b) ("The Secretary of Homeland Security or the Attorney General, in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary or the Attorney General may prescribe, may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum"). It is well established that the Secretary also has the discretion to "fashion [her] own rules of procedure and to pursue methods of inquiry capable of permitting [her] to discharge [her] multitudinous duties." *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council*, 435 U.S. 519, 543 (1978).

The Court next finds that the discretion exercised by the Secretary is one that is "specified under" the same title, chapter, or subchapter of the United States Code as section

---

[2] Subsection (a)(3)(B) states that an applicant is inadmissible if he has engaged in terrorist activity within the meaning of this statute. 8 U.S.C. § 1182(a)(3)(B).

1252(a)(2)(B)(ii). Section 1252(a)(2)(B)(ii) is found in Title 8, Chapter 12, Subchapter II of the United States Code. Within Subchapter II are sections 1159(b) and 1182(d)(3)(B)(i), which as previously noted, confer discretion on the Secretary to determine whether (and how) to issue a waiver of inadmissibility. *See Singh*, 710 F.Supp. 2d at 130.

Finally, the Court finds that the specified discretion is an "action," as that term is used in the statute, because the decision to hold the Plaintiffs' applications in abeyance is the result of a series of affirmative acts. *Singh*, 710 F.Supp. 2d at 131. The reason for the delay at issue here is to allow the Secretary the opportunity to deliberate upon and resolve a matter that unquestionably lies within her discretionary authority – namely, the formulation of regulations to guide her discretionary decision whether to grant Plaintiffs an exemption from the terrorism-related grounds for their inadmissibility.

The undersigned is aware that this Court has previously concluded, in a different context, that section 1252(a)(2)(B)(ii) does not bar judicial review; however, that facts underlying that decision easily distinguish it. In *Zemin Hu v. Reno*, No. 3-99-CV-1136, 2000 WL 425174 (N.D. Tex. 2000), the District Court concluded that it was not divested of jurisdiction where Plaintiff merely complained that the Secretary was not processing the plaintiff's application in a timely manner. Unlike this case, *Zemin* did not involve any <u>deliberate</u> efforts by the Secretary. In this case, the Secretary affirmatively acted by drafting an internal memorandum and policy to hold certain applications in abeyance until a further exemption determination can be made, and by specifically deciding to hold Plaintiffs' applications in abeyance based on that policy.

It should also be noted that this Court's review of the Secretary's decision to hold the Plaintiffs' application in abeyance would necessarily entail an indirect review of the Secretary's

discretionary authority. *Singh*, 710 F.Supp. 2d at 131-32 (discussing the discretionary decisions that would be reviewed); *Seydi*, 2011 WL 1135553 at *5 (same). "It strikes the Court as incongruous to, on the one hand, insist that Defendants act promptly to adjudicate an application that can only succeed through the exercise of the Secretary's discretionary authority, while at the same time advancing a theory of subject matter jurisdiction that disavows the notion that the Secretary has been called upon to exercise her discretionary authority." *Seydi*, 2011 WL 1135553 at *6.

Here, because all three components of section 1252(a)(2)(B)(ii) have been satisfied, the Court concludes that it lacks jurisdiction to hear Plaintiffs' claims. Because the Court determines that it lacks jurisdiction to review Defendants' actions, Plaintiffs' argument that Defendants have failed to comply with the deadlines prescribed by 8 C.F.R. § 103.2(b)(18) is not reached.

### III. RECOMMENDATION

Based on the foregoing analysis, the undersigned recommends that Defendants' *Motion to Dismiss* be **GRANTED,** and the case be **DISMISSED** against all Defendants.

**SO RECOMMENDED** on September 9, 2011.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE